UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL MOMCHILOV, | ) | CASE NO. 5:09CV1322 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| McILVAINE TRUCKING, | ) | **AND ORDER** |
| INTERNATIONAL, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| McILVAINE, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendant's motion for summary judgment (Doc. Nos. 21, 23[1]), plaintiff's memorandum in opposition (Doc. No. 22[2]), defendant's reply (Doc. No. 23), and plaintiff's sur-reply (Doc. No. 25). For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

On June 10, 2009, plaintiff Carol Momchilov ("Momchilov") sued her former employers McIlvaine Trucking, International, Inc. and McIlvaine, Inc. (collectively referred to as "McIlvaine"). Momchilov alleges two causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"). The first cause of action charges defendants with a violation of

---

[1] There are two Barnhouse Affidavits cited to herein. The first (cited as "1 Barnhouse Aff.") is attached to the motion for summary judgment (Doc. No. 21); the second (cited as "2 Barnhouse Aff.") is attached to the reply in further support of the motion for summary judgment (Doc. No. 23).

[2] The Momchilov Affidavit cited to herein is attached to the opposition brief.

1

the portion of ERISA § 510, 29 U.S.C. § 1140, which protects benefit plan participants or beneficiaries from discharge intended to interfere with their attainment of a right under the employee benefit plan or as a consequence of their exercising such a right. (Compl. ¶ 34.) The second claim is that McIlvaine unlawfully discharged Momchilov because she participated or planned to participate in an inquiry or proceeding that ERISA § 510 protects. (Compl. ¶ 38.)

McIlvaine Trucking, Inc. ("Trucking") is a commercial trucking company with its principal place of business in Wooster, Ohio. (Compl. ¶ 1; 1 Barnhouse Aff. at ¶ 3.) McIlvaine, Inc. ("Holding") has operated as the holding company for Trucking since Holding's creation in 1998. Holding is a Pennsylvania corporation with its principal place of business in Wooster, Ohio. (Compl. ¶ 2.) McIlvaine Trucking, International, Inc. ("International") is a wholly-owned subsidiary of Holding and has been primarily focused on hauling van freight since its creation in 2000. (Compl. ¶ 3.)

Momchilov began working for McIlvaine as its Director of Human Resources on January 3, 2006. (Momchilov Aff. at ¶ 1.) According to the complaint, Momchilov's duties included "administration of all employee benefit plans, employee relations, Workers' Compensation, hiring of the office staff, investigating employee complaints" as well as additional duties often associated with such a position. (Compl. ¶ 13.)

In 1996, Trucking established the McIlvaine Trucking, Inc. Employee Stock Ownership Plan ("ESOP"). (Answer ¶ 5.) The ESOP was the majority owner and controlling shareholder of both Trucking and Holding (Compl. ¶ 6.) Nearly all of the ESOP's assets were in the form of McIlvaine stock. (Compl. ¶ 17.) Because of her status as an employee, Momchilov was a participant in the ESOP. (Momchilov Aff. at ¶ 3.) Further, on October 20, 2006,

McIlvaine's Board of Directors appointed Momchilov to be a member of the ESOP committee. (Momchilov Aff. at ¶ 4.)

Momchilov and Kim Marty ("Marty"), another ESOP Committee Member, grew concerned about the management of McIlvaine. (Momchilov Aff. at ¶ 7.) Momchilov alleges that Douglas Jonsen ("Jonsen"), the President and sole member of McIlvaine's Board of Directors, was failing to pay bills, violating secured lending agreements, consistently missing work, spending company money on personal matters, having relationships with office employees, and was barely meeting the needs of the company's payroll each week. (Compl. ¶¶ 18-19; Momchilov Aff. at ¶¶ 7-8.) Momchilov further claims that other plan participants approached her and Marty in order to express concerns about the ESOP assets with regard to Jonsen's management of the company. (Momchilov Aff. at ¶ 9.)

In order to better understand their position and authority, Momchilov and Marty attended an ESOP workshop on December 5, 2007. (Momchilov Aff. at ¶ 10.) At this workshop, Momchilov determined that she had the authority to investigate McIlvaine's operations and to make changes to its governance and management. (Compl. ¶ 22; Momchilov Aff. at ¶ 12.) To this end, Momchilov states that, beginning on December 6, 2007, she made several requests for Plan Documents from ESOP Trustee Robert Barnhouse ("Barnhouse") but did not receive any documents until December 14, 2007. (Compl. ¶¶ 23-26; Momchilov Aff. at ¶¶ 13-16.) Barnhouse is the Chief Financial Officer and Corporate Secretary for McIlvaine. (2 Barnhouse Aff. at ¶ 2). Momchilov's requests included at least one email with Jonsen copied as a recipient. (Compl. ¶¶ 23-25.) McIlvaine terminated both Momchilov and Marty on December 18, 2007. The stated reason for her dismissal was that she was no longer "trustworthy." (Momchilov Aff. at ¶ 17; Doc. No. 22, Ex. 2.)

3

Momchilov alleges that the action by McIlvaine is in violation of ERISA § 510 and claims that the reason for her dismissal was either in retribution for her exercising her rights as a participant in the ESOP as extended by her position as an ESOP committee member or in an attempt to interfere with her exercising those rights. Secondly, she claims that her discharge was in retaliation for actions that qualify as participation in an inquiry and proceeding under ERISA § 510.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c)(2) governs summary judgment motions and provides "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits. [. . .] When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence

of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**B.     Analysis**

Defendants filed this motion for summary judgment on November 3, 2009, prior to the case management conference held on November 4, 2009. Because the motion was filed prior to any significant discovery, this Court's analysis will be limited to the basic questions of whether, under these circumstances, Momchilov qualifies for relief under ERISA § 510 and whether Momchilov has stated a claim upon which relief can be granted under that section.

*1. Discharge for exercising a right*

ERISA § 510 makes it unlawful "to discharge [. . .] a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [. . .] or for the purpose of interfering with the attainment of any [such] right [. . .] ." 29 U.S.C. § 1140. In order to state a claim upon which relief may be granted under this section the plaintiff must show that the defendant had "specific intent to violate ERISA through either direct or circumstantial evidence." *Schweitzer v. Teamsters Local 100,* 413 F.3d 533, 537 (6th Cir. 2005) (citing *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)). Direct evidence is evidence that requires no inference to show that at least part of the motivation for the termination was to interfere with the employee's ERISA rights. *Id.*

If no direct evidence of the employer's specific intent exists, a participant or beneficiary "must show that (1) she was engaged in activity that ERISA protects; (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the employer's adverse action." *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 628 (6th Cir. 2008) (citations omitted). If the plaintiff is able to make this prima facie showing, the defendant will have the opportunity to rebut the plaintiff's prima facie showing with "'evidence of a legitimate, nondiscriminatory reason for its challenged actions.'"

6

*Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir. 1992) (quoting *Gavalik v. Continental Can Co.,* 812 F.2d 834, 853 (3d Cir. 1987)). If the defendant is able to make this showing, the burden shifts "back to the plaintiff to show that the employer's proffered reason was mere pretext." *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997). The Court should grant summary judgment if Momchilov "does not present direct evidence, or 'fails to establish a prima facie case or . . . to rebut the employer's proffer of a legitimate, nondiscriminatory reason for its actions.'" *Schweitzer,* 413 F.3d at 537 (quoting *Ameritech*, 129 F.3d at 865).

There is nothing in the record that qualifies as direct evidence with regard to McIlvaine's intent. Momchilov must therefore establish a prima facie case under the statute. The current motion before the Court is limited to the question of whether ERISA § 510 provides standing for Momchilov to bring this claim as a participant and fiduciary of the ESOP and whether she has successfully stated a claim upon which relief can be granted. Her position as both a fiduciary and a participant in the plan adds a wrinkle to the analysis of the case. Her position as fiduciary, however, while not necessarily expanding her rights to sue under 29 U.S.C. § 1140, certainly does not diminish those rights.

There is no dispute that McIlvaine terminated Momchilov. This constitutes adverse employment action satisfying the second prong. Her success on this claim, therefore, depends on the remaining two elements.

The relevant portion of ERISA enables aggrieved *participants and beneficiaries* to bring a cause of action. 29 U.S.C. § 1132. In this case, there is no question that Momchilov is such a participant or beneficiary. Therefore, she was entitled to the same rights as any other non-fiduciary participant or beneficiary to the ESOP. This included the right to have the plan administrator "make copies of the latest updated summary plan description [. . .] or other

7

instruments under which the plan was established or is operated" and have those documents be available to her. 29 U.S.C. § 1024(b)(2). This includes "all currently operative, governing plan documents[. . .] ." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995).

The ESOP provides that the Plan Administrator is the Administrative Committee. (1 Barnhouse Aff., Ex. 1, Article XVII § 17.2.) The fact that Momchilov was a part of the Administrative Committee did not diminish her right to have that Committee provide her with the plan documents. In fact, it may give even stronger support to her right to the documents because her position as part of the Plan Administrator required her to make the Plan Documents available to all plan participants and beneficiaries. 29 U.S.C. § 1024(b)(2). At the very least, Momchilov, in her capacity as a plan participant, had the right to review plan documents and, therefore, this case involves an ERISA protected right.

To satisfy the last element of a prima facie case under ERISA § 510 Momchilov must show that "a causal link exists between her protected activity and the employer's adverse action." *Hamilton,* 522 F.3d at 628. Momchilov sufficiently pleaded facts tending to show such a causal connection. (Compl. ¶¶ 18-30.) McIlvaine's contention that there is no genuine issue of material fact with regard to the causation prong is beyond the scope of this summary judgment motion and further analysis on this issue would be imprudent considering the dearth of discovery at this time. Therefore, in this narrow inquiry into the viability of Momchilov's claim, the motion is denied.

2. *The Whistle Blower Provision*

Momchilov's second cause of action comes under the whistle blower provision of ERISA § 510. This provision makes it "unlawful for any person to discharge, fine, suspend, expel, or discriminate against *any person* because he has given information or has testified or is

about to testify in any inquiry or proceeding relating to [ERISA][. . .] ." 29 U.S.C. § 1140 (emphasis added). The statute defines the term "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Momchilov clearly falls into this broad category. To have a successful claim, therefore, Momchilov must show that (1) McIlvaine discharged her; (2) she gave information, testified, or was going "to testify in any inquiry or proceeding relating to" the ESOP; and (3) there was a causal connection between the dismissal and the inquiry. 29 U.S.C. § 1140. Further, once the plaintiff makes this prima facie showing, the defendant has the opportunity to rebut the plaintiff's prima facie showing with "'evidence of a legitimate, nondiscriminatory reason for its challenged actions.'" *Humphreys,* 966 F.2d at 1043 (quoting *Gavalik,* 812 F.2d at 853). The burden would then shift "back to the plaintiff to show that the employer's proffered reason was mere pretext." *Ameritech,* 129 F.3d at 865.

As for the first element, there is no dispute that McIlvaine terminated Momchilov. As to the second prong, the court must determine whether the actions taken by Momchilov fail as a matter of law to constitute a protected inquiry under ERISA § 510. To begin, the Court must determine whether the internal complaints and requests for documents constituted an inquiry under ERISA § 510. If such an investigation would qualify as an inquiry for the purposes of the statute, the remaining issues of whether such an inquiry did take place and whether McIlvaine terminated Momchilov because of that inquiry remain questions which are outside the scope of this summary judgment motion because of the lack of discovery to date.

The Sixth Circuit has not yet ruled on the issue of whether internal investigations constitute inquiries for the purposes of ERISA § 510. Four circuits have considered this issue

and, of them, only one has determined that the scope of ERISA § 510 does not reach to internal complaints and investigations. In *Hashimoto v. Bank of Hawaii,* the Ninth Circuit found that Congress meant this section of ERISA to protect "whistle blowers." 999 F.2d 408, 411 (9th Cir. 1993). With that in mind, the court decided that the plaintiff fell under the umbrella of ERISA § 510 when the plaintiff made a complaint about possible ERISA violations. *Id.*

The Fifth Circuit also ruled in favor of the broader reading of ERISA § 510 in *Anderson v. Electronic Data Systems Corporation*, 11 F.3d 1311 (5th Cir. 1994). There, the court determined that "reporting [ERISA] violations to management[ ]" would qualify a person for the protections granted under ERISA § 510. *Id*. at 1314. Similarly, the Second Circuit found that "[t]he informal gathering of information [. . .] falls within the plain meaning of inquiry, and [the court] need go no further to conclude that it is protected by Section 510." *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 329 (2d Cir. 2005) (quotations omitted).

The Fourth Circuit came to the opposite conclusion regarding ERISA § 510 in *King v. Marriot Intern., Inc.,* 337 F.3d 421 (4th Cir. 2003). That court read the statute as limiting the protections to individuals who were testifying or about to testify in "something more formal than written or oral complaints[ ]" made within the company. *Id*. at 427.

This issue has been addressed by a sister court in *Dunn v. Elco Enterprises, Inc.,* No. 05-71801, 2006 WL 1195867 at *4 (E.D. Mich. 2006). The court in *Dunn* noted that the Sixth Circuit had not ruled on this issue but has addressed similar issues providing insight into the Sixth Circuit's likely stance to this question and concluded that the Sixth Circuit was more likely to adopt the view shared by the Second, Fifth, and Ninth Circuits. *Id.* at * 4-5.

The district court in *Dunn* first noted that the Sixth Circuit held that ERISA § 510 provides a cause of action to victims of retaliation stemming from the employee's exercising of a

right under the benefit plan or ERISA itself. *Id.* at * 4 (citing *Schwartz v. Gregori,* 45 F.3d 1017, 1021 (6th Cir. 1995)). Further, the court observed that "the Sixth Circuit has held that ERISA provided a remedy to a plaintiff for retaliation based on her exercise of her fiduciary duties with respect to plan participants." *Id.* Even more persuasive, however, was the district court's analysis in *Dunn* regarding the Fourth and Sixth Circuit's differing interpretations of similar language under the Fair Labor Standards Act[3] ("FLSA"). *Id.* at * 5. In support of its decision to limit the scope of ERISA § 510, the Fourth Circuit looked to its previous holding that 29 U.S.C § 215 (a)(3) does not protect internal complaints. *King,* 337 F.3d at 427. The Sixth Circuit has come to the opposite conclusion holding that 29 U.S.C § 215 (a)(3) does protect internal complaints. *See Moore v. Freeman,* 355 F.3d 558 (6th Cir. 2003).[4] Given the striking similarity between ERISA § 510 and 29 U.S.C § 215 (a)(3), the district court reasoned that the Sixth Circuit would likely come to the same conclusion as to ERISA § 510.

---

[3] The courts differ in their interpretation of 29 U.S.C § 215 (a)(3) which makes it unlawful to retaliate against an employee " because such employee has filed any complaint or instituted or caused to be instituted any proceeding [. . .] or has testified or is about to testify in any such proceeding [. . .]." 29 U.S.C § 215 (a)(3).

[4] On March 22, 2010, the Supreme Court granted a writ of certiorari to the U.S. Court of Appeals for the Seventh Circuit in *Kasten v. Saint-Gobain Performance Plastics Corporation*, 78 U.S.L.W. 3439 (U.S. Mar. 22, 2010) (No. 09-834) on the following question: "Is an oral complaint of a violation of the Fair Labor Standards Act protected conduct under the anti-retaliation provision, 29 U.S.C. § 215(a)(3)?" Petition for Writ of Certiorari, 2010 WL 146471. It is remotely possible that the Supreme Court, when considering this question, may also address whether internal (as opposed to formally-filed) complaints may be made and are protected under the statute, even though Petitioner has clearly tried to narrow the question by noting as follows in a footnote:

> The section 215(a)(3) conflict most frequently discussed relates to whether complaints must be "formally" filed with a court or administrative agency. Eight circuits hold that internal complaints to an employer are protected. [citations to the Fifth, Ninth, First, Sixth, Eleventh, Third, Tenth, and Eighth Circuits omitted.] Two circuits hold that complaints must be filed in courts or administrative agencies. [citations to Fourth and Second Circuits omitted.] Because the Seventh Circuit correctly determined that complaints to an employer are protected, the only conflict at issue is whether oral complaints are protected activity, regardless of the venue in which they are raised.

*Id*. at * 9, n.3. It is difficult to see how an *oral* complaint could ever be effectively raised in either a court or an administrative agency, where matters are virtually exclusively raised through formal "pleadings." Therefore, in addressing whether *oral* complaints are protected, the Supreme Court may, of necessity, address whether *internal* complaints are protected. Nonetheless, this Court will apply the law as it believes it would be applied by the Sixth Circuit at this time.

This Court finds the reasoning in *Dunn* persuasive. Additionally, the plain language of ERISA § 510 shows that Congress intended to protect "whistle blowers" from retaliation. That protection would be greatly weakened if it did not include individuals who bring possible ERISA violations to the attention of the appropriate persons within a company.

### III. CONCLUSION

This early motion for summary judgment is limited to the determination of whether Momchilov qualifies to bring a claim under the two clauses of ERISA § 510. This Court concludes that Momchilov has made a sufficient showing that she has stated a claim upon which relief may be granted with regard to both causes of action. Further judgment is inappropriate without additional discovery. For the reasons discussed above, on the narrow issues considered, defendant's amended motion for summary judgment (Doc. No. 21) is **DENIED**. The Court will, by separate order, schedule a telephone conference with counsel to set the case management deadlines.

**IT IS SO ORDERED.**

Dated: March 24, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**