UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL MOMCHILOV, | ) | CASE NO. 5:09CV1322 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| McILVAINE TRUCKING INT'L, INC., | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is plaintiff's motion for leave to file her first amended complaint (Doc. No. 44), defendants' opposition (Doc. No. 49), and plaintiff's reply (Doc. No. 50). For the reasons discussed below, the motion is **DENIED**.

## I. BACKGROUND

On June 10, 2009, plaintiff Carol Momchilov filed her Complaint alleging that defendants had interfered with her rights arising under ERISA and an ERISA benefit plan and had retaliated against her for exercising those rights. Momchilov, the former Human Resources Director for the defendants, was terminated allegedly in retaliation for having exercised her rights as both a plan participant/beneficiary and a plan fiduciary by asking for copies of the plan documents.

After the Court scheduled the Case Management Conference, defendants moved to continue the conference asserting financial troubles that might make it difficult for them to

defend against the lawsuit and seeking additional time to assess their financial status and ability to proceed. The Court granted that motion and rescheduled the CMC. One day before the CMC, defendants simultaneously filed a motion for summary judgment[1] and a motion to stay discovery pending resolution of the dispositive motion. The Court granted the stay with a narrow exception. On March 24, 2010, the Court denied the summary judgment motion and set a telephone conference.

Following the conference, the Court set case management deadlines, including a deadline of April 2, 2010 to add parties or amend pleadings. Discovery proceeded, but not without problems. Another telephone conference was conducted and the Case Management Plan was amended, without changing the deadline for amending pleadings, which had already passed.

On September 16, 2010, plaintiff noticed the deposition of Doug Jonsen for September 29, 2010.[2] Momchilov was also deposed on September 30, 2010.

Momchilov now seeks to amend her complaint to add a state law claim of termination in violation of Ohio public policy based on information she obtained during Jonsen's deposition. The defendants oppose the amendment.

## II. DISCUSSION

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Further, the rule provides that "[t]he court should freely give leave when justice so requires."

---

[1] The motion for summary judgment was subsequently amended, without leave, but apparently without opposition from the plaintiff.

[2] A previous deposition of Jonsen had been cancelled due to discovery responses that had not been produced by defendants.

In support of her motion for leave to amend, plaintiff argues that she discovered, during her deposition of Doug Jonsen, the person who made the decision to fire her, that his reason for terminating her employment purportedly had nothing to do with her ERISA activities (which he claimed to know nothing about), but also was not as he had stated in her termination papers (namely, a "broken trust issue"). Rather, plaintiff claims that at his deposition Jonsen testified that he terminated plaintiff simply because he believed she had consulted an attorney. Since, in her view, Ohio public policy prohibits employers from terminating employees for consulting an attorney, Momchilov wishes to amend her complaint to add a cause of action for termination in violation of public policy.

Defendants argue in opposition that her proposed amendment should not be permitted both because it was submitted too late and because it could not withstand a motion to dismiss.

The Court dismisses without much discussion any assertion that the proposed amended complaint was submitted too late. Although it has been submitted after the deadline for amending pleadings, plaintiff has not attempted to simply *file* her amended pleading; rather, she has *moved* for leave to amend.

The more important issue for this Court to determine is whether amending would be futile. Defendants argue that the proposed amendment is futile for two reasons: (1) because her proposed state law claim would be completely preempted by ERISA, and (2) because Jonsen's deposition testimony does not support an allegation of violation of public policy.

The Court will address defendants' second argument first. At his deposition, Jonsen was questioned as to his reasons for terminating Momchilov's employment. Plaintiff argues that he testified quite simply that he fired her because she consulted an attorney, which

3

she characterizes as a violation of Ohio public policy. However, when the deposition testimony is read in its entire context, it is clear that Jonsen claimed to have fired Momchilov because he thought she and another ESOP committee member, Kim Marty, were conspiring with Greg McIlvaine to remove all management personnel, in particular, Jonsen. He testified as follows:

> Q. Who made the decision to terminate Ms. Momchilov's employment?
>
> A. I did.
>
> [. . .]
>
> Q. Why did you terminate Carol's employment?
>
> A. I felt I couldn't trust her any longer, and there was a number of reasons for that, which I'd like to explain.
>
> Q. Please do.
>
> [. . .]
>
> Q. So tie it into Carol Momchilov. So far we've talked a lot about Kim, your concerns about Kim, and then out of the blue you terminate Carol. Tie it together.
>
> A. Well, basically, I had gone on sales calls that week, and I'd been at my sister's house. We had plans of letting a number of people go. I mean, we had a list of people that we were going to terminate. Kim was one of them. I was packing at the hotel in Connecticut and I got an e-mail in the morning from Dennis Dunn -- or from Kim, actually, that said he wasn't coming to work. That was Tuesday morning. I'm driving down through New Jersey, and I said, I'm going to call Carol and see what's going on. I called Carol, no answer. Tried a number of times on her cell phone, wouldn't answer me.
>
> Q. What time of the day was this?
>
> A. It was in the morning, probably eight or so. And then I called Dennis and I said, where is Carol? And he said, well, she's apparently sick. So I hung up the phone from him, and to be honest with you, it flew over me like white on rice. I felt that at that point Kim and Carol had -- were conspiring to do something. I didn't know what it was, I just felt that there was

something extremely bad going on. I called Chuck Casey immediately and --

[. . .]

Q. And on December 17th or December 18th, I think it was, 2007, he was an employee of McIlvaine?

A. Correct.

Q. So you gave Chuck --

A. I called Chuck Casey and I told him my feelings, and this is before anything happened, and I told him I felt that, you know, there was something going on. I felt that they had gone to an attorney is what I told him. And I think it has something to do, I told him I think it has something to do with Greg McIlvaine. I think Greg McIlvaine is behind this. I think Greg McIlvaine is doing something to try to kill this suit.

Q. Which would be perfectly normal for a defendant in a suit looking to do something to resolve the suit; right? I mean, what could Greg McIlvaine do to kill this suit?

A. Well, if he killed the management of the company that would have ended the lawsuit.

Q. Okay, got you. Okay. So you're thinking that Kim and Carol took time off to meet with an attorney?

A. Are conspiring.

Q. Your words, are conspiring to assert some sort of legal right to take over control of the company and fire you; correct?

[. . .]

A. Yeah, I mean, basically.

[. . .]

Q. The only way that you knew they could stop the lawsuit was to change personnel who were managing the company?

A. Well, I didn't know. I had no idea what they were going to attempt to do to make that happen. I just felt they were trying to do that.

[. . .]

Q. Did it dawn on you that Kim would conspire with Carol to vote as a majority of the committee members on the ESOP to direct the trustee to withdraw the suit?

A. No, never.

Q. Why -- that's sort of an obvious way to stop the lawsuit.

A. It just -- it wasn't part of my thought process. It just didn't some into my head.

(Jonsen Dep. at 4-5, 64-67, 144-45.)  He further testified:

Q. Sitting here today, did Carol call off sick to go see a lawyer?

A. I don't know. No idea.

Q. For all you know she was home sick?

A. Sure.

Q. So you had to fire her; right?

A. Well, I explained earlier that I had an intuition [. . .] that there was an issue that was developing with -- that I felt was developing with Kim Marty and Carol Momchilov, and that was it.

(Jonsen Dep. at 140.)

A claim of discharge in violation of public policy is a recognized exception to Ohio's common-law doctrine of employment at will. *See Painter v. Graley*, 70 Ohio St. 3d 377, 382 (1994). To prevail on the claim a plaintiff must prove: 1) a clear public policy exists and is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element); 2) dismissing employees under the circumstances involved in the plaintiff's case would jeopardize the public policy (the jeopardy element); 3) the plaintiff's dismissal was motivated by reasons related to the public policy (the causation element); and 4)

the defendant lacked a legitimate business justification for dismissing plaintiff (the overriding justification element). *Collins v. Rizkana,* 73 Ohio St.3d 65, 69 (1995).

Plaintiff's proposed amended complaint asserts, without specificity, that there is a "clear public policy in favor of an individual's right to consult legal counsel and obtain access to the civil justice system [. . .] manifested in the United State's [sic] and Ohio's constitution, statutes, judicial opinions and ethical codes." (Doc. No. 44-2, ¶ 43.) In the brief in support of her motion, plaintiff points to certain Ohio cases as authority for this allegation. *See* Doc. No. 44-1 at 7-11, citing *Simonelli v. Anderson Concrete Co.*, 99 Ohio App. 3d 254 (Ohio Ct. App. 1994) (employee alleged wrongful termination for retaining attorney regarding employer's disciplinary warning); *Chapman v. Adia Servs.*, 116 Ohio App. 3d 534 (Ohio Ct. App. 1997) (employee terminated for consulting attorney regarding possible on-the-job personal injury claim against employer's customer).

Both *Simonelli* and *Chapman* are distinguishable from the instant case on their facts. In both cases, the plaintiff's were able to establish that they went to a lawyer to inquire about vindicating a clear legal right that each plaintiff's employer did not want exercised. In this case, Jonsen testified in his deposition that he suspected plaintiff had gone to see a lawyer as part of some sort of plot with Greg McIlvaine and Kim Marty to oust the company management. Plaintiff has not pointed to any case that says an employee has a protected legal right to overthrow her employer's management and that such right exists because it would be in the public's interest. The mere fact of seeking legal advice cannot be the sort of public policy that protects an employee from termination; if it were, any employee could protect herself from even

7

an otherwise legitimate termination simply by making it known to her employer that she went to an attorney, without even stating the reason for going.[3]

Although leave to amend should ordinarily be liberally granted, in light of the deposition testimony of Jonsen quoted at length above, the Court concludes that plaintiff has simply taken Jonsen's passing remark about an attorney entirely out of context to attempt to create a new state law cause of action and that, in any event, there is no underlying public policy that would protect plaintiff's employment in the factual circumstances alleged in this case. The Court sees no basis, especially at this late date in the proceedings,[4] to grant the motion for leave to amend to add a state law claim that has only the barest possible chance, if any, to survive.

The Court turns next to the issue of preemption. ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan[.]" 29 U.S.C. § 1144(a) (emphasis added). Pointing to the legislative history, the Supreme Court has held that "ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citing *Ruble v. UNUM Life Ins. Co.*, 913 F.2d 295 (6th Cir. 1990); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990);

---

[3] The court in *Collins* pointed out that "[t]he origin of the public policy exception to the employment-at-will doctrine can be traced to the case of *Petermann v. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396* (1959), 174 Cal.App.2d 184, 344 P.2d 25." In *Petermann*, an employee had been discharged for refusal to commit perjury on his employer's behalf. Clearly, this is a matter that is definitely in the public's interest and should be able to be vindicated in a civil court, even where employment is at-will.

[4] This case was filed on June 10, 2009 and was assigned to the Standard Track. Under LR 16.2 (a)(2)(B), a Standard Track case "should be completed within fifteen (15) months or less after filing." That means this case should *already* have been resolved; however, due to the course of proceedings to date, it is not scheduled for trial until May 31, 2011. The current discovery deadline is December 31, 2010. Adding an additional claim at this late date will undoubtedly further delay the proceedings and require additional time for discovery.

*McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426 (6th Cir. 1989); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir. 1987)).

This is not the standard ERISA case where a plaintiff is suing to get benefits under an ERISA plan. In this case, plaintiff alleges that she was a fiduciary under ERISA[5] by virtue of the fact that she was a member of the ESOP Committee charged with administering the ESOP Plan, which is an ERISA plan. She alleges that, when she and another Committee member began to have concerns about the management and direction of the defendant companies, whose stock makes up virtually all of the assets of the ESOP, and when, in her fiduciary capacity, she began to make inquiries and ask for copies of plan documents, attempting to investigate whether the Plan assets were being properly protected, she was fired.

Her initial causes of action were for (1) interference with her rights as an ERISA participant, beneficiary, and fiduciary and (2) retaliation for her exercise of those rights. She brought those claims because she believed that she was terminated only after she began to investigate what she believed was mismanagement of the ESOP plan's only assets, that is, the companies themselves, and the companies' management.

In support of their opposition to granting leave to amend, defendants point to the case of *Authier v. Ginsberg*, 757 F.2d 796 (6th Cir. 1985). In *Authier*, a fiduciary of an ERISA pension plan, had become aware of potential problems with the plan and, as a fiduciary, believed that he was obligated under ERISA to inform his co-fiduciaries and the plan's participants, which he did by sending a letter. Since Authier had been instructed by his employer to have all non-routine correspondence pre-cleared by his supervisor and he had failed to do so with this

---

[5] The complaint also acknowledges that Momchilov was a participant and beneficiary under the ERISA plan and, as such, had the right to request the plan documents.

letter, he was fired. He brought suit alleging that his termination violated Michigan public policy and a jury found in his favor. On appeal, the jury verdict was vacated and the case remanded with instructions to dismiss the complaint. The court held that "ERISA created the public policy element of the commonlaw action[,]" *id*. at 800, and "even though the Michigan cause of action regulates ostensibly employment relationships and not pension plans, preemption is not precluded in this specific application." *Id.* The court "conclude[d] that since ERISA created a substantive element of the Michigan action and since the action turns upon a fiduciary's duties under ERISA, Authier's cause of action is related to ERISA within the meaning of Section 1144(a) and, accordingly, is expressly preempted." *Id*. (footnote omitted).

Momchilov's claims center around her alleged exercise of her rights as a fiduciary under ERISA. In paragraph 17 of her complaint, she alleges, in part, that "as an ESOP Committee member and named fiduciary, [she] had the obligation and the authority to oversee the management of the Defendants and to take appropriate measures to ensure that it was prudent, which included direction to the Trustee to remove or appoint Defendants' Board Members and Officers." In their answer to the complaint, the defendants deny these allegations. (Answer, ¶ 17.) Thus, in order for this Court to resolve the proposed state law claim of violation of public policy, it would need to construe the ERISA plan documents.[6]

The Court concludes that allowing leave to amend to add a state law claim is not warranted because that claim has virtually no chance of surviving and is very likely preempted by ERISA.

---

[6] Plaintiff tries to make the very narrow argument that Jonsen either terminated her employment because of the exercise of her ERISA rights *or* because of his belief that she had consulted an attorney. She argues that, if he terminated her for the former reason, ERISA governs, but if he terminated her for the latter reason, then state law applies and is not preempted because ERISA would not be implicated. (Reply Brief, Doc. No. 50, at 2.) The Court finds no merit in this argument.

### III. CONCLUSION

For the reasons discussed above, plaintiff's motion for leave to file her first amended complaint (Doc. No. 44) is **DENIED**.

**IT IS SO ORDERED**.

Dated: December 2, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**